## A. vs. B.

### Mal. Pros.

Modern decisions of Courts of England, subversive of the ancient common law, or Statutory principles adopted in Georgia, are of no authority in this State.

An action for a malicious prosecution, in cases of *felony*, cannot be maintained, without previously obtaining the order of the Court for a copy of the Indictment.

*Felony*, in Georgia, is the commission of a crime, which subjects to infamous punishment.

Forfeiture of lands or goods, is not in Georgia, a component part of the punishment of *felony*.

*Perjury* is felony, under the criminal laws of Georgia.

*Perjury* at *common law* is abrogated in Georgia.

An action for a malicious prosecution cannot be sustained in Georgia, on an indictment for perjury at common law.

To bring an offence under a statute, one of these two courses must be adopted : to prefix to the general conclusion, " contrary to the form of the statute in such case made and provided," or, to recite the tenor and substance of the statute, upon which the indictment was founded.

### By CHARLTON, Judge.

**THIS** action is founded on an acquittal for the charged offence of perjury, and the introduction of the exemplification of the indictment and verdict as evidence, is objected to, because there is no order of the Judge, before whom the case was tried for such copy.

The reasons assigned for the objection is, that in every case of felony, the party who intends to sue for the malicious prosecution, must obtain leave from the Court, for a copy of the indictment. Two questions then present themselves for consideration :

1*st*. Is a Judge's order for a copy of the indictment, in a case of felony, necessary to the support, or rather maintainance of an action of *mal. pros.* founded on an acquittal of that felony?

And 2*dly*. Is perjury a felony, under the jurisprudence of Georgia ?

[A. vs. B.]

I. It is declared by the authorities, to which the counsel in this case, have referred, that the records of the British Court are accessible to the inspection of any subject for his " necessary use and benefit," and this inspection would seem to mean a right to demand copies of them, if copies should be required for the " necessary use and convenience" of the subject. The inspection allowed by the parliament of *Edward III.* involves the correlative right of a copy of the judicial record, (*Phil. Ev.* 322, 3 *Inst.* 71. *Pref.* to 3 *Rep.* 3, 4. as cited by *Phillipps.*)

This general right, however, of obtaining a copy of the record is restrained, says the authority, " in the case of an acquittal on a prosecution for felony," in which case, if the trial is at the Old Bailey, a copy cannot regularly be obtained without an order from the Court. Directions prefixed to *Kelyng's Rep. p.* 3, order 7.

Some of the Judges in the reign of *Charles II.,* legislated on the subject, and required, that such an order should be obtained. And it is laid down, " as a general rule of law," by *C. J. Holt,* that " on an indictment and acquittal for felony, the party who intends to sue for a *mal. pros.* must obtain leave of the Court for a copy of the record." 1 *Ld. Raym.* 253. *Phillipps,* says, that the rule of the Judges (that, I presume, adopted at the Old Bailey,) states, " that an action against a prosecutor cannot be maintained, without a copy of the indictment, and that a copy is not to be given, without an order of the Court."

We have it then as established law, down to the epochas of the rule at the Old Bailey, and the reiteration of that rule, by *Holt,* Ch. J. of the Court of King's Bench, as announcing " the general rule of law," that an action against the prosecutor cannot be maintained, without a copy of the indictment, obtained under leave of the Court.

It was also adjudged by Lord *Mansfield,* " that when a person was indicted for felony, it was necessary that a copy of the record

should be granted by the Court, before which the acquittal was had, in order to ground an action for a *Mal. Pros.*"

If it is said, that the reports of *Blackstone* are of inferior authority to his commentaries, it will be found, that the reported adjudication of Lord *Mansfield*, and the text of the commentaries are perfectly reconciliable, for the commentaries declare, " that where there is the least probable cause, the Judge will deny a copy of the record :" and if it is denied, according to the decision of Lord *Mansfield*, there is no basis for the action of mal. prosecution.    In opposition to these authorities, the counsel for the plaintiff referred to the case of *Legatt* vs. *Tollervey*, in which, a copy of the indictment was not allowed to be read, because there was no order of the Court, and therefore a non-suit was entered. But the Court of King's Bench, through the medium of its *C. J. Ellenborough*, set aside the non-suit, not upon the ground that the rule at the Old Bailey was not in force ; not, that the decisions of *Holt* and *Mansfield* had not truly announced that rule as general law ; but that a copy of the record ought to be read, *because it was offered in evidence*, and if the order of the Court had not been previously obtained, why the officer of the Court furnishing a copy, had been guilty of a contempt in doing that, which he ought not to have done—and for which of course he subjected himself to punishment; yet, that this contempt and official transgression, ought not to deprive the plaintiff of its benefits as testimony.    (14 *East.* 302.)

Upon this adjudication, if I am not mistaken, the counsel for the plaintiff rested his chief hopes for the admissibility of the copy of the record, as evidence.    He might have gone further and ostensibly supported this case by other authorities.    In *Brangam's* case, *Willis*, Ch. J. is reported to have said, that by the laws of the realm, every prisoner, upon his acquittal, has an undoubted right and title to a copy of the record, for any use he may think proper to make of it—and that after a demand, the

proper officer might be punished for refusing to make out a copy. This case is, however, of no authority, for subsequent to it, we find, as Justice *Nott* has said in the reports of the constitutional Court of our sister State, " the Old Bailey rule was re-published by order of the Court."

We have then only to contend with the case of *Jordan* vs. *Lewis*—Lord *Ellenborough's* decision in *East,* and the opinion of *Phillipps,* (the compiler of the Law of Evidence,) " that the rule laid down in *Jordan* vs. *Lewis,* is the correct rule." In that case, " the order made at the Old Bailey was there read by way of objection to the evidence offered ; but the Ld. Ch. J. *Lee* in that case said, that he could not refuse to let the plaintiff read the copy of the indictment, though obtained without any order of the Court for that purpose."

From the authorities thus collated, it would appear, that the rule at the Old Bailey is only assailed by the case of *Jordan* vs. *Lewis,* and the very modern decision of Lord *Ellenborough.* The counsel for the plaintiff in another case, almost immediately preceding it, had endeavored, or was about to endeavor to shake a *nisi prius* decision of the same Ch. J. *Ellenborough,* upon the ground that it was modern law, not incorporated into our jurisprudence ; and therefore repudiated from our judicial system. I willingly assent to this doctrine, whenever the modern adjudication subverts the ancient common law or adopted statutory principles, instead of explaining them. This decision in *East* does subvert the ancient principle—acknowledges too, its violation of allegiance, and only justifies the treason by a sort of commiseration for the plaintiff, who is permitted to give that in evidence, which he has obtained through a punishable breach of duty of the officer affording it. This case bows to the authority of *Jordan* vs. *Lewis,* and as *Jordan* vs. *Lewis* conflicts with the rule at the Old Bailey and other anterior cases, it must also be rejected as the incorporated law of Georgia.

[A. vs. B.]

Policy and Justice are too, on the side of the rule at the Old Bailey, and are sensibly assigned in the reason for the adoption of the rule thus consecrated by the opinions of *Holt* and *Mansfield*, " for the late frequency of actions against prosecutors (which cannot be without copies of the indictment,) deterreth people from prosecuting for the King (and we may here say the Republic,) upon just occasions.

II. If forfeiture of land or goods, as urged by plaintiff's counsel, is the criterion for the ascertainment of felony, then it is admitted, at least by me, that there is no felony in this State. *Blackstone* says, that the true criterion of felony is forfeiture. The punishment of perjury, (continues this author) was anciently death, afterwards banishment, or cutting out the tongue ; then forfeiture of goods, and now it is fine and imprisonment, and never more to be capable of bearing testimony.   By the Stat. 5 *Eliz.* imprisonment, perpetual infamy, a fine, and both ears nailed to the pillory.   The Stat. of *Geo. II.* superadds a power for the Court to order transportation for seven years : and makes it *felony*, without benefit of Clergy, to return or escape within the time.   By these statutory punishments of England, perjury could therefore only be considered felony, upon a return from transportation : but forfeiture is not, and never has been since the organization of our government, a component part of a punishment for felony.   What then is our notion of felony ?   It is, as has been adjudicated, the commission of a crime, which subjects to infamous punishment.   This definition pursues the genius of the English law, as adopted in this State, without its gothic appendage of forfeiture, equally applicable to a capital punishment and petit larceny.   The punishment inflicted for perjury by the penal code of Georgia, is as infamous and may be protracted to the periods prescribed for acknowledged felonies, such as burglary, one species of arson, robbery, and the higher grades of larceny.   What can be found then in our legal or political ethics to exempt this atrocious crime of perjury, striking with inveterate

hatred, as it necessarily must, at the root and foundation of all our sacred rights of life, liberty, and property—what, I repeat, can exempt it from the appel ation of felony ?   Law, reason, justice, the moral sentiment of my countrymen believe it felony, and I take leave through this department of the government, so to proclaim it—I mean perjury, as contained and defined by the penal code of Georgia, and when prosecuted by indictment under that system.   The perjury however of the record before us, though alleged to have been committed posterior to the passing and operation of the penal code, has no technical or other reference to it, except in the conclusion, which pursues the form prescribed by the penal code, and as that cannot be deviated from, it is questionable, whether any other conclusion explanatory of the offence, that is, whether it is charged as an offence at common law, under the system of the penal code, or against a particular statute, need appear upon the face of the indictment.   I presume, however, if the offence is statutory, that Mr. Attorney General would prefix to the conclusion as prescribed, or has been in the habit of prefixing the terms "contrary to the form of the statute (or the Act) in that case made and provided."   Such terms would technically and definitely designate the basis of the indictment, whether the prosecution was intended under the penal code, or any particular statute.   But these additional terms become unnecessary as explanatory of the offence, intended to be prosecuted, where the indictment adopts the words and definition contained in the penal code.   At least such is the exposition given to the penal code, and such is the practice and impression which prevail in the section of the State, where I have the honor to preside.   The better opinion probably is, that in order to bring the offence within the penal code or a statute, one of these two courses must be adopted—to prefix to the general conclusion "contrary to the form of the Act of Assembly or statute in that case made and provided," or, to recite the tenor or substance of

the section of the penal code or statute upon which the indictment is founded. Either course, would render patent the object of the indictment and prosecution. In this case, though the offence is laid in the indic'ment in a technical phraseology, which might satisfy the requisitions of the penal code as contained in the definition and description of perjury, yet, there is not that direct reference to it, by either of the courses before suggested, as sufficiently designates the intention of the Attorney General, to prosecute for a penal code or statutory perjury. I am therefore, or may be required *to consider the offence as perjury* charged at common law, punishable by fine and imprisonment and perpetual disability to bear testimony—and if perjury at common law, it is no felony, and consequently the order of the Court is not necessary for a copy of the record. The question then would be whether the variant and increased and infamous punishment, inflicted by the penal code of Georgia, has not abrogated the common law prosecution and common law punishment? Can they be co-existent upon these doctrines applicable in the interpretation of a statute, which establishes a system of crimiual jurisprudence as the supreme law of the State, variant from the common law in its principles and its punishments? If they cannot co-exist, then can an indictment and an acquittal thereon, at common law, be the foundation in this Court, of the action of mal. prosecution. Upon the whole then, it would seem as established law, that in every case of felony the order of the Court for the copy of the record is necessary—that according to my opinion, perjury is felony under the penal code of Georgia—and that the common law punishment being thereby abrogated, an *indictment* for the offence at common law being inhibited—no action for *mal. pros.* can be legitimately sustained on an indictment at common law, prosecuted in this jurisdiction—and upon which there has been an acquittal—*Quacunque via data*, the plaintiff must fail in his action.

---

*Felony*, is defined by the penal code of Georgia which went into operation on the 1st June, 1834, " when used in this act, as an offence, for which the offender, on conviction. shall be liable by law to bo punished by death, or imprisonment in the Penitentiary, and not otherwise."--(*Ed.*)